IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

VICTOR PULLETT

                 Petitioner,            Civil No.   15-cv-01241-DRH-CJP

vs.

KIMBERLY BUTLER

                 Respondent.

## MEMORANDUM and ORDER

Victor Pullet (Petitioner), proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in this Court. (Doc. 1). He challenges his 2003 conviction in Pulaski County, Illinois for first-degree murder. *Id.* at p. 1. Petitioner contends he is entitled to habeas relief because prosecutorial misconduct deprived him of a fair and impartial trial; his trial, appellate, and post-conviction counsel were ineffective; and the State did not prove him guilty beyond a reasonable doubt. *Id.* at pp. 8-30.

## Background

On June 13, 2002, Reverend Edward Ballard walked out of his home to feed his livestock and noticed a vehicle stopped with its engine running in the travel

lane. (Doc. 18, Ex. 1, p. 3). Ballard observed a man in the driver's seat, apparently sleeping with his head against the car window. *Id.* After feeding his hogs, Ballard approached the vehicle and discovered that the driver, Henry Sterling, was actually dead. *Id.*

Sterling suffered two gunshot wounds from very close range to the head and neck. *Id.* The recovered projectiles were fired from the same weapon, which was "a nine millimeter/.38 class and could have been a nine-millimeter, a .38-caliber, or a .357-caliber weapon." *Id.*

The State charged Petitioner with first-degree murder and he proceeded to a jury trial. *Id.* at p. 1. During jury selection, potential juror Darryl Houston disclosed he was Petitioner's paternal uncle. (Doc. 18, Ex. 8, p. 4). Houston consistently stated his relationship with Petitioner would not affect his ability to be fair and impartial. *Id.* The defense and the prosecution ultimately accepted Houston as a juror. *Id.*

At trial, the prosecution presented evidence that Petitioner and Sterling both attended a social gathering at an apartment complex on June 12, 2002. (Doc. 18, Ex. 1, p. 1). Sterling had previously supplied information to the police that led to felony charges being brought against Petitioner. *Id.* Dave Reed, a police officer who lived at the apartment complex, heard a gunshot, looked out his window, and saw Petitioner and two other men. *Id.* at pp. 1-2. Reed opined the shot was fired from a .38-caliber or a nine-millimeter weapon. *Id.* He also heard one of the men say, "Put that away. You know it has a trigger, and it's easy to go

off." *Id.* at p. 2. Petitioner then apparently hid the gun under Arica Lynn Shered's mattress. *Id.* Later, in the early morning of June 13, 2002, Petitioner woke Shered to retrieve the gun. *Id.*

Cenethia Mackins, who was present at the gathering, testified Petitioner asked Sterling for a ride home and Sterling agreed. *Id.* Petitioner, "in a rage," told Mackins he was going to kill Sterling because Sterling "almost took 15 years of [Petitioner's] life." *Id.* Tina Acree, also present, heard the same. *Id.* According to Acree, Mackins told Petitioner, "[Y]ou bogus. You trying to set Sterling up to kill him." *Id.* Mackins then tried to run after Sterling to tell him not to take Petitioner home. *Id.* Petitioner, however, pushed Mackins back into the apartment and threatened to kill her if she said anything. *Id.* Acree believed Petitioner would follow through on his threat against Sterling and attempted to find a mutual friend to dissuade Petitioner. *Id.* Mackins initially told police she saw Petitioner leave in Sterling's car, but testified at the trial that she was unsure of what she saw. *Id.*

During closing arguments, the prosecution likened the case to a puzzle that "fit together very nicely." *Id.* at p. 4. The prosecutor stated Petitioner had a motive to harm Sterling and Petitioner "held life very cheaply." *Id.* Petitioner objected. *Id.* The court overruled the objection and the prosecution continued to urge that Petitioner "doesn't think the same way as polite society does." *Id.* Petitioner did not object to the statement. *Id.* The prosecution then asked the jury what they knew about Petitioner's intent and followed with, "What we know is exactly what

he told us—or what he told those individuals who testified." *Id.* Petitioner did not object. *Id.* The prosecution also set forth a theory that Sterling gave Petitioner a ride home, pulled over so Petitioner could urinate, and Petitioner took the opportunity to shoot Sterling. (Doc. 18, Ex. 22, p. 50).

The defense then agreed the case was similar to a puzzle, but "a puzzle that you buy at a yard sale for a quarter in a plastic bag, where it's out of the box, and you don't know what the picture looks like. And when you start to put it together, all of the pieces don't fit." *Id.*

On rebuttal, the prosecutor responded that the only thing in the case that was ever in a plastic bag "was the dead body of Sterling Henry when he was removed from that vehicle for the very first time." *Id.*

The jury returned a guilty verdict for first-degree murder and Petitioner was sentenced to fifty-eight years' imprisonment. (Doc. 18, Ex. 1, p. 5).

Petitioner filed a direct appeal, arguing the prosecutor's closing argument amounted to misconduct that deprived him of a fair trial. *See* Doc. 18, Ex. 1. An Illinois appellate court affirmed the conviction. (Doc. 18, Ex. 1). Petitioner filed a petition for leave to appeal (PLA) to the Supreme Court of Illinois, (Doc. 18, Ex. 4), which was denied, (Doc. 18, Ex. 5).

Petitioner then filed a *pro se* petition for post-conviction relief under Illinois' Post-Conviction Hearing Act (735 ILCS 5/122-1 *et seq.*). (Doc. 18, Ex. 6). He asserted he was denied due process of law because his uncle served as a juror; his trial and appellate counsel were ineffective; prosecutorial misconduct deprived

him of a fair trial; and the State failed to prove him guilty beyond a reasonable doubt. *Id.* Petitioner, through appointed post-conviction counsel, amended his post-conviction petition to assert only claims for ineffective assistance of trial counsel and a due process violation for his uncle's service on the jury. (Doc. 18, Ex. 7). The circuit court denied the petition. (Doc. 18, Ex. 8, pp. 1-9). Petitioner was appointed post-conviction appellate counsel, who moved to withdraw from the case on the basis that an appeal would be meritless. (Doc. 18, Ex. 10). Petitioner responded, asserting his post-conviction counsel was ineffective for not setting forth all of the issues from his original *pro se* petition in his amended petition. (Doc. 18, Ex. 11). The Illinois appellate court reviewed the merits of Petitioner's *pro se* petition and the amended petition. (Doc. 18, Ex. 9). The court simultaneously granted the motion to withdraw and affirmed the circuit court's judgment. (Doc. 18, Ex. 9). Petitioner filed a PLA to the Supreme Court of Illinois, arguing ineffective assistance of trial, appellate, and post-conviction counsel, and prosecutorial misconduct. (Doc. 18, Ex. 13). The PLA was denied, (Doc. 18, Ex. 14), and Petitioner timely filed a petition for writ of habeas corpus in this Court under § 2254, (Doc. 1).

## Analysis

Pursuant to 28 U.S.C. § 2254, a person in custody pursuant to a State court judgment may bring a petition for a writ of habeas corpus "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a). Petitioner, here, presents the following bases for habeas relief:

(1) Prosecutorial misconduct deprived him of his right to a fair and impartial trial when the prosecutor made (a) "improper remarks" and (b) "repeated argument of facts which were not supported by evidence, during closing arguments"

(2) His trial counsel was ineffective for failing to remove Petitioner's uncle from the jury

(3) His trial counsel was ineffective for failing to impeach Cenethia Mackins with prior inconsistent statements

(4) His trial counsel was ineffective for not consulting with Petitioner before trial and interview and investigate witnesses "to form a competent defense"

(5) His trial counsel was ineffective for stipulating to Petitioner's prior felony conviction

(6) His trial counsel was ineffective for failing "to call any witnesses in support of a viable theory of defense"

(7) His trial counsel was ineffective for not filing a motion *in limine* to bar "evidence gathered by agents of the 'Cairo Public Housing Drug Task Force'"

(8) The State failed to prove Petitioner guilty beyond a reasonable doubt of first-degree murder

(9) His direct appellate counsel was ineffective for failing "to raise all issues in Post Conviction Petition"

(10) His post-conviction counsel was ineffective for improperly amending Petitioner's post-conviction petition "under false pretenses"

(11) His post-conviction counsel appellate counsel was ineffective for filing a motion to withdraw as post-conviction appellate counsel when appealable issues were available

Respondent concedes the habeas petition is timely and Petitioner exhausted his State court remedies. However, Respondent contends Petitioner's claims are

procedurally defaulted, not cognizable for review under § 2254, and/or are meritless.

### 1. Non-Cognizable Claims

Petitioner asserts his post-conviction counsel was ineffective for improperly amending his post-conviction petition "under false pretenses" (Ground 10) and his post-conviction appellate counsel was ineffective for moving to withdraw as counsel when appealable issues were available (Ground 11).

Pursuant to 28 U.S.C. § 2254(i), "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Moreover, there is no constitutional right to post-conviction counsel, so such a claim cannot serve as a ground for federal habeas relief. *See Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) (where the petitioner "never had a constitutional right to post-conviction counsel, so any ineffectiveness on his part could not have generated a constitutional injury warranting post-conviction relief."). Accordingly, the Court **DISMISSES** Grounds 10 and 11 **WITH PREJUDICE** as not cognizable under § 2254.

### 2. Procedural Default: Full and Fair Opportunity for State Court Review

Before bringing a habeas petition in federal court, principles of comity mandate a petitioner give the State court a "full and fair opportunity" to resolve constitutional claims by "invoking one complete round of the State's established

appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Under Illinois' two-tiered appeals process, a petitioner must present his claims to an intermediate appellate court and to the Supreme Court of Illinois in a PLA. *Id.* at 843-46. Otherwise, the claims are procedurally defaulted and a respondent may raise the default as an affirmative defense. *Lewis v. Sternes*, 390 F.3d 1019, 1029 (7th Cir. 2004).

Petitioner, here, asserts the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. However, he did not raise the argument in his direct appeal and he omitted it from his PLA to the Supreme Court of Illinois during his State post-conviction proceedings. Respondent asserted the default in its response to the petition, avoiding any issues of waiver. The claim is therefore procedurally defaulted.

### 3. Procedural Default: Independent and Adequate State Grounds

Respondent also asserts several of Petitioner's claims are procedurally defaulted under the independent and adequate state ground doctrine.

Federal courts will not review a state court's decision regarding a federal law if the decision rests on a state ground "that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

Petitioner, here, argues the prosecutor made "improper remarks" that deprived him of a fair trial (Ground 1(a)). He asserted the same on direct appeal, conceding he procedurally defaulted the argument at the State level because he

did not raise a contemporaneous objection to the prosecutor's comments at trial or in a post-trial motion for a retrial. The Illinois appellate court declined to excuse the default and affirmed Petitioner's conviction and sentence.

The independent and adequate state ground doctrine acts to bar federal habeas review when a state court declined to address a petitioner's federal claims for failing to meet a state procedural requirement. *Coleman*, 501 U.S. 711 at 729-30. Ground 1(a) is therefore procedurally default.

Similarly, in his Illinois post-conviction petition, Petitioner raised the same ineffective assistance of trial counsel claims now before the Court (Grounds 1-7). The Illinois appellate court held that the "failure to consult" claim (Ground 4) and the "failure to call witnesses" claim (Ground 6) were procedurally defaulted. Petitioner did not introduce evidence or testimony to support his "failure to consult" claim and improperly relied on conclusory allegations. In addition, Petitioner did not tender affidavits from the witnesses that trial counsel allegedly failed to call, as required under Illinois law. Grounds 4 and 6 are therefore defaulted as well, since the State court's determination rested on independent and adequate State procedural grounds.

### 4. *Excusal of Procedural Default*

The Court may excuse procedural default "if the petitioner can show both cause for and prejudice from the default, or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013).

Petitioner, here, argues ineffective assistance of trial, direct appellate, and post-conviction counsel serve as cause to excuse the procedural default of his claims. Alternatively, he asserts he is actually innocent and that dismissing his claims on procedural grounds would result in a fundamental miscarriage of justice.

### a. *Cause and Prejudice*

Cause for default is generally established when a petitioner can demonstrate an "external impediment" prevented him from pursuing his claim. *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). Meritorious ineffective assistance of trial and appellate counsel claims may serve as cause to excuse procedural default, "[b]ut those claims must themselves be preserved." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). "The result is a tangled web of defaults excused by causes that may themselves be defaulted and require a showing of cause and prejudice—a result that has an 'attractive power for those who like difficult puzzles.'" *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 458 (2000)) (internal quotations omitted).

Petitioner did not preserve two of his ineffective assistance of counsel claims because, as discussed *supra*, the Illinois appellate court dismissed them as procedurally defaulted. Specifically, Petitioner did not preserve his claims that trial counsel was ineffective for not consulting with Petitioner (Ground 4) and for not calling any witnesses to support a defense (Ground 6). Therefore, these

claims cannot serve as cause to excuse default unless Petitioner can show cause and prejudice to excuse their default.

Petitioner alleges his direct appellate counsel was ineffective for not raising the issues on appeal. Petitioner preserved his claims for ineffective assistance of direct appellate counsel because he presented them for one full round of State court review in his State post-conviction petition. On the same hand, Petitioner preserved four of his ineffective assistance of trial counsel claims (Grounds 2, 3, 4, and 7). The Illinois appellate court determined Petitioner's direct appellate counsel was not ineffective because the underlying claims for ineffective assistance of trial counsel are meritless. The Supreme Court of Illinois then denied Petitioner's PLA.

Federal courts generally cannot grant habeas relief with respect to any claim already adjudicated on the merits in state proceedings. 28 U.S.C. § 2254(d). Two exceptions arise where the state's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

### i.  Ineffective Assistance of Trial and Appellate Counsel

Federal courts evaluate ineffective assistance of counsel claims using the familiar two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984); a petitioner must show (1) his counsel's performance "fell below an objective standard of reasonableness," *Id.* at 669, and (2) "but for counsel's

unprofessional errors, the result of the proceedings would have been different," *Id.* at 694. The Illinois appellate court that reviewed Petitioner's ineffective assistance claim also applied *Strickland*.

The Supreme Court has explained, "Surmounting *Strickland's* high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo v. Moore*, 562 U.S. 115, 122 (2011). "

Here, the Illinois appellate court determined trial counsel was not ineffective for failing to remove Petitioner's uncle from the jury. Counsel testified at a post-conviction hearing that she asked Petitioner if he had an issue with his uncle's presence on the jury and Petitioner did not object. The appellate court noted the circuit court's finding that counsel was reliable. The appellate court concluded, "Counsel cannot be deemed to have rendered ineffective assistance by failing to remove Houston where counsel specifically asked [Petitioner] whether he had a problem with Houston's presence on the jury and [Petitioner] raised no objection." (Doc. 18, Ex. 9, p. 13).

The State court reasonably applied *Strickland*. Illinois' jury qualifications are codified in 705 ILCS 305/2, and the statute does not exclude blood relatives from serving as jury members. Moreover, jury selection is a matter of trial strategy and the "review of an attorney's tactical decision is highly deferential." *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011). There is no indication Houston exhibited bias against Petitioner during jury selection and Houston maintained he

would remain fair and impartial. (Doc. 18, Ex. 19, pp. 32, 35, 36, 39, 45, 60-61, 63, 121-22). Petitioner testified at his post-conviction evidentiary hearing that he expressed concerns to trial counsel about Houston's presence and requested Houston be removed from the jury. (Doc. 18, pp. 20-23). However, trial counsel testified at the hearing that she consulted with Petitioner and he offered no objection. *Id.* at 39, 41, 45, 47. Trial counsel believed Houston's participation on the jury "was a good strategy." *Id.* at 47-48. The circuit court found trial counsel "reliable." (Doc. 18, Ex. 8, p. 8). Counsel's decision to keep Houston on the jury was ultimately a reasonable strategic decision, quelling any argument for ineffective assistance.

The appellate court further determined Petitioner's trial counsel was not ineffective for failing to impeach Mackins with a prior inconsistent statement. Mackins originally told police she saw Petitioner get into Sterling's car, but at trial she testified she was unsure of what she saw. The court opined,

> We fail to see how impeaching Mackins with her prior statement to police would be helpful to [Petitioner]. The State had already mentioned Mackins's prior statement, which was more damaging to [Petitioner] than her actual testimony. Had counsel questioned Mackins on the statement as well, it would have only drawn further attention to the fact that Mackins originally said that she saw [Petitioner] enter the victim's vehicle before Henry was killed. Refraining from drawing further attention to Mackins's prior statement by using it to impeach her trial testimony was prudent trial strategy.

*Id.* at p. 18.

The State court reasonably opined that trial counsel provided effective assistance in this instance. Trial counsel's decision not to impeach Mackins was a matter of trial strategy; counsel did not want to draw attention to Mackins'

previous statement that was unfavorable to Petitioner's defense. "The strong *Strickland* presumption that trial counsel had good reasons for strategic decision" again defeats Petitioner's ineffective assistance claim. *United States v. Lindsay*, 157 F.3d 532, 536 (7th Cir. 1998).

The court also concluded that Petitioner's trial counsel was not ineffective for failing to file a motion *in limine*. Petitioner asserted his counsel should have moved to bar evidence the "Cairo Public Housing Drug Task Force" gathered because one of the agents was not a qualified housing authority police officer and the agents weren't authorized to investigate the case.

The court noted that none of the agents testified at trial and the only evidence Petitioner pointed to was a consent-to-search form signed by the owner of the vehicle in which Sterling's body was found. The form, however, was a Pulaski County sheriff's department form that the sheriff and a housing authority agent both signed. "Thus, any evidence that was obtained as a result of this search would have been obtained with or without [the agent]." (Doc. 18, Ex. 9, p. 17).

Petitioner further asserted that two agents interviewed an individual whose statement severely prejudiced him. The individual said her son told her he was in the car with Sterling and Petitioner, exited to urinate, and ran away after something happened. The interview was not presented at trial, but Petitioner argued the prosecutor "slipped in small portions" of the individual's statement during closing argument. The appellate court did not find a reference to the statement during closing arguments.

The State court's application of *Strickland* was reasonable here as well. Petitioner contends the consent-to-search form was invalid because a housing authority agent signed it as a witness and the form led to the discovery of the projectiles that linked Petitioner to the crime. However, there is nothing in the State's jurisprudence articulating the requirements of a valid consent-to-search form and Petitioner does not provide an argument for why the evidence would otherwise be inadmissible or overly prejudicial. "[C]onsidering that a motion *in limine* is sought to aid counsel in formulating his trial strategy, the decision whether to file such a motion is clearly part of the process of establishing trial strategy." *United States v. Mutuc*, 349 F.3d 930, 935 (7th Cir. 2003) (quoting *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (internal quotations omitted). Petitioner does not specify any other evidence trial counsel should have addressed in a motion *in limine*. Moreover, as the State court found, there was no mention during closing arguments that a third person was in the car with Sterling and Petitioner.

The Illinois appellate court further determined Petitioner's trial counsel was not ineffective for stipulating to Petitioner's prior felony conviction. Petitioner's counsel stipulated prior to trial that Petitioner had been charged with a felony and, furthermore, that Sterling gave a statement to police identifying Petitioner as the perpetrator of the felony. The court opined, "By stipulating that [Petitioner] had a prior felony conviction, counsel prevented the jury from finding out the name and details of that felony." (Doc. 18, Ex. 9, p. 14). The court concluded the

decision was "a matter of trial strategy." *Id.* It further opined that the conviction would have been admitted to show motive even if trial counsel did not stipulate to the charge.

The State court's application of *Strickland* here was undoubtedly reasonable, given *Strickland*'s deference to trial strategy and Petitioner's inability to show prejudice.

Furthermore, the court determined Petitioner's "failure to consult" claim was "nothing more than a generalized complaint about counsel's performance, devoid of any specific or particular factual allegations." *Id.* at pp. 14-15. It did not reach the merits of the argument. Similarly, the court found that Petitioner failed to attach an affidavit supporting his claim that trial counsel was ineffective for not calling Debra McElmurry to provide an alibi defense. Nonetheless, it opined the argument failed because McElmurry's testimony did not actually provide Petitioner with an alibi. The court's analysis was, again, reasonable. Petitioner cannot establish prejudice from trial counsel's decision not to call McElmurry as a witness.

Finally, the State court held that Petitioner's appellate counsel was not ineffective for failing to raise an ineffective assistance of trial counsel claim because any argument would be meritless.

To exceed on a claim for ineffective assistance of appellate counsel, "[Petitioner] must show that appellate counsel failed to raise an obvious issue that is stronger than the other claims raised and that prejudice flowed from that

failure." *Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010). Because Petitioner's claim "is predicated on trial counsel's errors, the two claims rise and fall together." *Id.*

In sum, the State court reasonably applied *Strickland* in determining Petitioner's trial and appellate counsel were not ineffective. Thus, ineffective assistance of trial and appellate counsel cannot serve as cause to excuse the default of Petitioner's claims.

Moreover, "when we review a state court's resolution of an ineffective assistance claim in the cause-and-prejudice context, we apply the same deferential standard as we would when reviewing the claim on its own merits." *Richardson*, 745 F.3d 258 at 273. Since the State reasonably applied *Strickland* to Petitioner's ineffective assistance claims, **Grounds 2, 3, 5, 7, and 9** are **DISMISSED WITH PREJUDICE** under § 2254(d).

### ii. Ineffective Assistance of Post-Conviction Counsel

Petitioner also asserts his post-conviction counselors' ineffective performances excuse the default of his claims. Although ineffective assistance of post-conviction counsel is not a basis for relief under § 2254, it may serve as cause to excuse default in narrow circumstances. *See Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017).

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held that ineffective assistance of post-conviction counsel does not qualify as cause to excuse procedural default because the Constitution does not guarantee the right to

counsel in state post-conviction proceedings. Later, in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court "announced a narrow exception to *Coleman's* general rule." *Davila*, 137 S. Ct. at 2062. This exception treats ineffective assistance of state post-conviction counsel as cause to overcome procedural default of ineffective assistance of trial counsel claims only "where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal." *Id.* at 2062-63.

As an initial matter, it is doubtful that the *Martinez* exception applies to Illinois because Illinois allows petitioners to raise ineffective assistance claims on direct appeal. *See O'Quinn v. Atchison*, 2014 WL 1365455, at *5 (S.D. Ill. Apr. 7, 2014). Nonetheless, Petitioner's claims for ineffective assistance of post-conviction counsel are meritless. Petitioner contends his initial post-conviction counsel was deficient because she amended his post-conviction petition "under false pretenses" (Ground 10) and his post-conviction appellate counsel was ineffective because she unreasonably withdrew as counsel when appealable issues were available (Ground 11).

To establish constitutionally deficient performance, the counselors' performances must have prejudiced the petitioner. Here, the Illinois appellate court reviewed both the initial *pro se* petition and the amended petition. Therefore, even if post-conviction counsel did err in amending the *pro se* petition, the error did not prejudice Petitioner. Additionally, Petitioner asserts post-conviction appellate counsel should have appealed the denial of his claim for

ineffective assistance of trial counsel for trial counsel's stipulation to Petitioner's prior felony. However, the State court reasonably found that trial counsel rendered effective assistance in that instance. Therefore, post-conviction appellate counsel was not ineffective in failing to raise the argument in an appeal.

Petitioner cannot avail himself of *Martinez* to excuse procedural default. For the Court to reach the merits of his claims, Petitioner must establish the miscarriage of justice exception set forth in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

### b. Actual Innocence

In *McQuiggin v. Perkins*, the Supreme Court held that "a credible showing of actual innocence" may overcome procedural default because the Court's refusal to consider the petition would result in a "fundamental miscarriage of justice." *Id.* at 392. A showing of actual innocence is "demanding" and "seldom met." *Id.* at 386.

A credible claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The *Schlup* standard permits habeas review of defaulted claims only in the "extraordinary case" where the petitioner has demonstrated that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more

likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Here, Petitioner does not present any new, reliable evidence. Rather, he points to the lack of evidence against him, which does not meet *McQuiggin*'s standard.

While Petitioner contends that all of the State's witnesses were "high on drugs, alcohol, or both," he does not provide any facts to support the contention. (Doc. 28, p. 2). The conclusory allegation is insufficient to establish actual innocence.

Overall, Petitioner has failed to show that the circumstances of his case justify the Court excusing the procedural default of his claims. Accordingly, **Grounds 1(a), 4, 6, and 8** are **DISMISSED WITH PREJUDICE.**

### 5. *State Court Adjudication of Federal Claims on the Merits*

Petitioner has one remaining argument that is not procedurally defaulted and is cognizable under § 2254. He asserts prosecutorial misconduct deprived him of his right to a fair and impartial trial when the prosecutor argued facts not in evidence during closing arguments. However, the State court adjudicated this claim on the merits during Petitioner's post-conviction proceedings.

As set forth above, § 2254(d) describes two circumstances where a federal court may grant habeas relief even when a state court already adjudicated the petitioner's claim on the merits. Under § 2254(d)(2), the Court may review a state court's adjudication where the state court's decision relies on an unreasonable determination of the facts—i.e. "it rests upon fact-finding that ignores the clear

and convincing weight of the evidence." *Morgan v. Hardy*, 662 F.3d 790, 801 (7th Cir. 2011) (internal quotations and citations omitted).

Here, the Illinois appellate court opined that any prosecutorial misconduct was immaterial in light of the considerable evidence against Petitioner. The court noted the unfavorable evidence against Petitioner, including that a witness saw Petitioner fire a gun the night before Sterling's murder. Petitioner suggests the State appellate court's decision was based on an unreasonable determination of the facts because no such evidence exists. A review of the trial transcript confirms that no witness testified to seeing Petitioner fire a gun. Shered testified she saw Petitioner with a gun the night before Sterling's murder. (Doc. 18, Ex. 21, p. 36). Furthermore, Reed testified he heard a shot outside his window that same night and observed Petitioner and two other men standing around, discussing the discharge of a firearm. *Id.* at p. 26. However, no one testified to actually seeing Petitioner fire the gun.

Despite the erroneous statement, the State court reasonably determined that the evidence weighed heavily against Petitioner. The State court noted the following evidence: Petitioner was angry because Sterling provided information to police that Petitioner committed a felony for which he faced fifteen years' imprisonment; multiple people heard Petitioner threaten to kill Sterling; Petitioner physically threatened one of those individuals, who tried to warn Sterling; a police officer who lived at the apartment complex where the gathering occurred heard a shot from a .38-caliber weapon or a nine-millimeter weapon;

Petitioner retrieved a gun early the next day; Sterling was murdered with a nine-millimeter, .38-caliber, or a .357-caliber weapon; and Sterling was murdered less than a half a mile from Petitioner's mother's house, to which Petitioner could have traveled a cross-country route that concealed him from passersby. (Doc. 18, Ex. 9, pp. 19-20).

The State court's misstatement did not render its determination of the facts unreasonable. In light of the other evidence the court cited, its conclusion did not lie "well outside the bounds of permissible differences of opinions." *Morgan v. Hardy*, 662 F.3d 790, 800 (7th Cir. 2011).

Moreover, even if the State court's determination was an unreasonable determination of the facts, Petitioner's claim would fail on its merits. The Seventh Circuit has explained,

> If a prosecutor makes improper remarks during trial, the Supreme Court looks at the remarks in light of the entire record to determine if the defendant was deprived of a fair trial and considers several factors in evaluating a due process claim arising from alleged misconduct, including whether the prosecutor manipulated or misstated the evidence, whether the comments implicated other specific rights of the accused, whether the trial court's instructions ameliorated the harm, and whether the evidence weighed heavily against the defendant, and whether the defendant had an opportunity to rebut the prosecutor's comments.

*Lopez v. Leibach*, 13 F. App'x 353, 357 (7th Cir. 2001).

Petitioner, here, argues the prosecutor improperly told the following narrative, which was not based on evidence in the record:

> Factor in – some of the gentlemen jurors know – factor in these guys had been drinking all night long. Driving out on a country road, what comes next? I got to stop because I got to urinate. When they stop on a country

road to urinate, you don't park so your buddy has got to get out and fall in a ditch. Plenty of room to stand there. If you are a guy driving a vehicle, and the guy next to you says I've got to stop to urinate, and he gets out, you're not going to be looking over there to where he's urinating. You're going to be looking straight ahead. That's the immutable rule when you're stopping on a country road to urinate is you look straight ahead.

If you look at *** Sterling Henry, and the fact that he was shot in the side of the head, right through the neck, he never saw it coming because he wasn't looking because he had a reason not to look.

(Doc. 18, Ex. 22, p. 50).

Based on the factors summarized in *Lopez*, any improper comments did not deprive Petitioner of a fair trial. As the State court noted, there was strong circumstantial evidence against Petitioner. Additionally, the defense had opportunities to rebut the statement. In fact, trial counsel told the jury on multiple occasions that there was no evidence of who was in the car with Sterling. *Id.* at pp. 64, 70, 73. Trial counsel also reminded the jury, "What the State is telling you is not evidence. They're making an argument based on what they think the evidence is." *Id.* at p. 75. In addition, the court's instructions ameliorated any harm. The trial judge specifically instructed the jury before deliberations, "Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." *Id.* at p. 83.

In sum, even if the State court's decision rested on an unreasonable determination of the facts, Petitioner's prosecutorial misconduct claim is meritless. Ground 1(b) is **DENIED**.

## 6. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court should issue a certificate only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where the Court dismisses a petition on procedural grounds without reaching the underlying constitutional issue, the petitioner must show that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The petitioner must establish both components for a COA to issue.

Here, it is clear that Petitioner's petition is procedurally defaulted or barred from review under § 2254(d). In addition, he has not advanced a credible claim of actual innocence within the meaning of *McQuiggin* and *Schlup*. No reasonable jurist would find the issue debatable. Accordingly, the Court denies a certificate of appealability.

## Conclusion

Victor Pullet's petition for habeas relief under 28 U.S.C. § 2254 (Doc. 1) is

**DENIED and DISMISSED with prejudice**. The Clerk of Court shall enter

judgment in favor of Respondent.

**IT IS SO ORDERED.**

Judge Herndon
2018.01.29
14:28:03 -06'00'

**United States District Judge**